Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/28/2022 09:06 AM CDT

Breanna M. Hamann, appellee,
v. Jay M. Hamann, appellant.

___ N.W.2d ___

Filed June 28, 2022.    No. A-21-490.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Divorce: Property Division.** Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

3. ____: ____. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.

4. ____: ____. In a dissolution action, there is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.

5. **Divorce: Alimony.** Under Neb. Rev. Stat. § 42-365 (Reissue 2016), in considering alimony, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the

interests of any minor children in the custody of each party. In addition, a court should consider the income and earning capacity of each party and the general equities of the situation.

6. **Alimony.** The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate.

7. **Alimony: Appeal and Error.** An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record.

Appeal from the District Court for Sarpy County: Stefanie A. Martinez, Judge. Affirmed as modified.

W. Gregory Lake, of Nebraska Legal Group, for appellant.

Wesley S. Dodge for appellee.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

Pirtle, Chief Judge.

## INTRODUCTION

Jay M. Hamann appeals from an order of the Sarpy County District Court dissolving his marriage to Breanna M. Hamann and distributing marital property. Jay challenges the division of the marital estate in two respects, as well as the court's award of alimony, and the failure to reimburse him for a portion of Breanna's attorney fees paid with a joint credit card. For the following reasons, we affirm as modified herein.

## BACKGROUND

Jay and Breanna were married in July 2010, in Mesa, Arizona. Three children were born to the marriage in 2015, 2017, and 2019, respectively. After the marriage in 2010, the parties initially resided in Tucson, Arizona. Jay is a member of the U.S. Air Force, and at the time of the marriage, Jay was stationed at Davis-Monthan Air Force Base in Tucson. From January to March 2017, Jay attended officer training school in Montgomery, Alabama, after which the parties relocated to Pensacola, Florida. The parties then relocated to the

Omaha, Nebraska, area in October 2018, as Jay was stationed at Offutt Air Force Base.

On December 12, 2019, Breanna filed a complaint for dissolution of marriage in the district court for Sarpy County. On December 16, Jay filed an answer and counterclaim for dissolution of marriage. Both parties filed motions for temporary allowances, and a hearing on those motions was held on January 8, 2020. On February 5, the court entered an order establishing temporary joint physical and legal custody of the three children. The order also awarded Breanna temporary exclusive occupancy of the marital home; however, the court ordered that Jay "shall pay and be responsible for the monthly mortgage payment, taxes, and insurance and utility expenses for the marital residence until further order of the Court." Trial was held on February 23, 2021.

*Disputed Vanguard Retirement Account.*

The record reflects that the parties had three Vanguard retirement accounts which were ultimately distributed as part of the marital estate. Two of the three accounts were amply supported by both testimonial and documentary evidence at trial. Both parties testified and submitted exhibits regarding a Vanguard "joint brokerage account" No. 2908. Furthermore, Jay testified and submitted an exhibit regarding a Vanguard "individual IRA" No. 9205 in his name only.

Both parties also testified to a third Vanguard account in Breanna's name only; however, neither party testified to any specifics about that account, such as the account number or account value. Indeed, the court entered oral findings on the record at the end of trial indicating that the record failed to adequately support the third account. Yet, the court ultimately distributed all three accounts, even making reference to the specific account number of the third Vanguard account in Breanna's name only. To reconcile this apparent inconsistency, one need only look to the last page of exhibit 32, which was admitted very shortly before the court entered its oral findings on the record.

Toward the end of trial, during the cross-examination of Jay, Breanna's counsel asked a series of questions regarding recent transfers of funds from the parties' joint checking account. The basis for the questions was an exhibit which Breanna's counsel referred to as "a rebuttal exhibit on withdrawals from joint accounts." Breanna's counsel neglected to offer the exhibit during cross-examination; however, upon reviewing the trial exhibits at the close of the evidence, Breanna's counsel confirmed that he intended to offer the exhibit. Thereafter, the exhibit was admitted into evidence as exhibit 32 without any objection from Jay.

Exhibit 32 consists of 7 pages total, including pages 1 through 5 which reflect various transfers of funds from the parties' joint checking account. However, pages 6 and 7 contain documents regarding the Vanguard retirement accounts. Page 6 appears to be a confirmation regarding a change in contact information on file with Vanguard, and page 7 appears to be a screenshot of an online "dashboard" summarizing the values of all three Vanguard accounts as of December 27, 2019. Specifically, exhibit 32 reflects a "Roth IRA" account No. 9026 in Breanna's name only, a "Roth IRA" account No. 9205 in Jay's name only, and a brokerage account No. 2908 in the name of both parties.

Notably, the account values reflected in exhibit 32 with respect to accounts Nos. 2908 and 9205 differ slightly from the stand-alone exhibits the parties submitted for those accounts. For example, exhibits 13 and 21 demonstrate a total value of $48,551.04 for account No. 2908 as of December 31, 2019, whereas exhibit 32 demonstrates a total value of $48,671.52 in the same account as of December 27. Likewise, exhibit 23 demonstrates a total value of $57,918.55 for account No. 9205 as of December 31, 2019, whereas exhibit 32 demonstrates a total value of $58,066.86 in the same account as of December 27.

These minor fluctuations in the account values are significant insofar as they indicate that the court relied upon

exhibit 32, as opposed to the stand-alone exhibits, when distributing these accounts. The court stated on the record, "I'm going to order that the Vanguard account of the amount of $58,066.86 be awarded to [Breanna] in its entirety[, a]nd the other account, in the amount of $48,671.52 be ordered to [Jay]." Thus, the court was obviously aware of the Vanguard account information in exhibit 32. While the parties' testimony regarding the third Vanguard account was admittedly lacking in specificity, such limited testimony, in conjunction with the information contained in exhibit 32, was apparently sufficient for the court to change course and ultimately award the third account. Altogether, the court awarded the entirety of accounts Nos. 9026 and 9205 to Breanna and awarded the entirety of account No. 2908 to Jay. Using the account values reflected in exhibit 32, Breanna was awarded a total value of $88,600.19 in retirement assets, whereas Jay was awarded a total value of $48,671.52.

*Deferred Mortgage Payments.*

As discussed above, the court entered a temporary order in February 2020, awarding Breanna exclusive occupancy of the marital home and ordering Jay to continue paying the mortgage on the home. Exhibit 8 demonstrates that as of March 2020, the monthly mortgage payment on the home was $2,239.69, with $476.22 of that sum going toward the principal. At trial, Jay testified that he took advantage of a COVID-19 mortgage forbearance program, which allowed him to defer mortgage payments beginning in March 2020. Jay testified that he understood the deferred payments would "just be put on the backside of the loan [and] shouldn't increase the cost of the mortgage [but] should extend the payments of the mortgage."

On cross-examination, Breanna's counsel pressed Jay, stating, "[Y]ou were ordered to pay $2,239 a month and you didn't pay it. And you didn't have a reduction in income, so you're ahead of the game 26-, 27,000-plus dollars than you

would have been if you'd had to pay that mortgage, right?"
Counsel then added the following:

> And there's less equity in the house than there would
> have been otherwise, because the house was gaining at
> least $500 a month in equity. And now that equity's not
> there, because you chose not to make those payments.
> You took advantage of an opportunity, and nobody can
> blame you for that, but you at least should admit that you
> gained from it, correct? You're in a better spot because
> of it.

Jay acknowledged that the forbearance provided him with
almost $27,000 which he would not have had if he had made
the mortgage payments as ordered. However, Jay also indicated
that he would not have been able to afford his other living
expenses without that money. The court ultimately entered the
following findings on the record:

> I understand the testimony of [Jay] that he had to pay,
> provide for his own apartment for the children; however,
> he was ordered by the court, based on [his income], to
> maintain the mortgage on the home, on the marital home.
> He did not do so, and now is asking the court to essen-
> tially, award him the home, which he now believes that
> he'd like to keep, because it's a financial deficit to both
> parties if it were sold, but wants to kind of circumvent
> the court's order and not make him[self] responsible for
> the mortgage that he did not pay, which comes, approxi-
> mately, to the amount of $26,868. So, the court mentions
> that only insofar as to show that there was sufficient
> money, at least based on his pay stubs, that he did have
> that accessible to him to make those mortgage payments
> and chose to defer it to a later date.
>
> . . . .
>
> It's my understanding that [Jay] wishes to have the
> marital home. That marital home shall be awarded to
> [Jay]. However, he is to pay $26,868 to [Breanna] for the

amount of — total amount of mortgage that he did not pay pursuant to the temporary order.

Thus, in the final decree, the court awarded the home to Jay and ordered him to pay Breanna $26,868 "representing unpaid mortgage payments, that were to be paid, pursuant to the prior Temporary Order by this Court."

*Alimony.*

Throughout the parties' marriage, Breanna stayed home with the children as a full-time parent. The record reflects that Breanna has a degree of some kind, but her mother testified that it is "kind of a general associates of arts," adding that "[s]he doesn't have any specific career training." Breanna testified that she was admitted into a radiology program at a medical institute in Arizona shortly before giving birth to the parties' first child in 2015, but she deferred her enrollment to care for the newborn. Thereafter, the parties decided to have another child and eventually relocated to Florida, so Breanna became a stay-at-home mother.

Breanna continued to stay home with the children through the parties' relocation to Omaha and the birth of their third child. Breanna testified that her "goal" was to go back to school when the youngest child turned 1 year old, adding that she was interested in reapplying to the medical institute in Arizona. Breanna testified that alimony in the sum of $500 per month for 2 years plus $300 per month for another 2 years would allow her to complete some form of further education and transition to supporting herself and the children. The court entered the following findings on the record:

> [T]he parties were married for approximately 11 years; . . . during the term of the marriage, there was an agreement of some sort that [Breanna] would remain home until, I believe it was the youngest child turned one. She did not continue with her education nor employment, so she was able to stay home and care for the children.

She has an associates degree and has a plan for further education to increase her income.

Sometime after relocating to Florida, Breanna began working for her mother in a limited remote capacity, earning $500 per month. Sometime after filing this action in December 2019, Breanna took on additional responsibilities in that position and began earning between $1,500 and $1,700 per month. Breanna testified that she was waiting to know the outcome of the trial prior to applying for any jobs in Omaha, but that she had begun looking for jobs in both Omaha and Arizona. For purposes of calculating child support, the court set Jay's monthly income at $5,689.80 and set Breanna's monthly earning capacity at $1,800. The court ultimately ordered Jay to pay Breanna alimony in the amount of $500 per month for 24 months and $300 per month for 24 months thereafter.

*Reimbursement of Attorney Fees.*

Breanna initially retained the law firm Hightower Reff Law, L.L.C., to represent her in this action. Breanna hired different counsel prior to trial; however, Jay testified that Breanna's initial retainer was charged to his credit card. An account statement from a credit card account under the name of both parties reflects a charge of $3,570 from "HIGHTOWER REFF LAW" on December 9, 2019. Jay testified that he paid that credit card bill and thus sought to be reimbursed for the charge. In the final decree, the court ordered each party responsible for his or her own debts and attorney fees, without any mention of the $3,570 in attorney fees that Breanna charged to the credit card.

## ASSIGNMENTS OF ERROR

Jay assigns, restated, that the district court erred in (1) distributing three retirement accounts after entering oral findings that the record adequately supported only two retirement accounts, (2) ordering Jay to pay Breanna a cash award in the sum of $26,868 for deferred mortgage payments,

(3) ordering Jay to pay alimony in the sum of $500 for 24 months and $300 for 24 months thereafter, and (4) failing to reimburse Jay for a portion of Breanna's attorney fees charged to a joint credit card account.

## STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*.

## ANALYSIS

[2,3] Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. *White v. White, supra*. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. *Id*. The second step is to value the marital assets and marital liabilities of the parties. *Id*. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Id.* The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Id*. In this case, Jay does not challenge the classification of property in any respect. Rather, Jay's central arguments on appeal pertain to the appropriateness of the court's division of the marital assets.

### *Disputed Vanguard Retirement Account.*

Jay's first assignment of error pertains to the court's division of the three Vanguard retirement accounts. Jay first argues that it was an abuse of discretion to divide all three accounts despite having previously found that only two were

adequately supported by the record. However, as discussed above, we find that the record does adequately support the existence and value of all three accounts. Thus, we cannot say it was an abuse of discretion for the court to award all three accounts in the final decree.

Jay further argues that even if it was proper to award the third account, the court's distribution thereof amounted to "a windfall" for Breanna. Brief for appellant at 22. Using the values reflected in exhibit 32, Breanna was awarded a total of $88,600.19 in retirement assets, whereas Jay was awarded a total of $48,671.52. The parties were each awarded the personal property and vehicles in their possession; however, the court did not assign a value to those items for purposes of equalizing the marital estate. Additionally, Breanna was awarded 50 percent of the marital portion of Jay's military retirement benefits and Jay retained his benefits under the "GI Bill"; however, the court similarly did not assign a value to these matters. The only other asset distributed from the marital estate was the marital home, which was awarded to Jay subject to the $26,868 cash award for deferred mortgage payments.

The court found that it did not have any direct evidence of the value of the home, but Jay testified that he estimated the value of the home to be $325,000. Jay testified that his estimate was based on his review of eight comparable homes listed in exhibit 31. Moreover, exhibit 8 demonstrates that at the time of trial, there remained an unpaid mortgage balance of $305,973.12. Thus, if we assume Jay's estimate is accurate, then he was awarded approximately $19,000 of equity in the home. However, after accounting for the $26,868 cash award to Breanna, Jay effectively took a $7,800 loss on the home. While the $26,868 cash award will be discussed in the following section, excluding that payment, Jay was awarded $48,671.52 in retirement assets and approximately $19,000 of equity in the marital home for a total of approximately $67,671.52 in marital assets.

[4] "The purpose of a property division is to distribute the marital assets equitably between the parties." § 42-365. There is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Vanderveer v. Vanderveer*, 310 Neb. 196, 964 N.W.2d 694 (2021). In the present case, there was a total of approximately $156,272 in marital assets which the court distributed to the parties. Of that sum, Breanna was awarded $88,600.19, or approximately 57 percent. Excluding the $26,868 cash award, Jay was awarded $67,671.52, or approximately 43 percent. That figure is well within the general rule, and we cannot say such was an abuse of discretion. Thus, with the exception of the $26,868 cash award discussed below, we affirm the court's division of the marital estate.

*Deferred Mortgage Payments.*

While the court awarded the home to Jay, it also ordered Jay to pay Breanna a cash award of $26,868 representing mortgage payments which were deferred under a COVID-19 relief program. On appeal, Jay points out that the forbearance did not impact Breanna's use and enjoyment of the home pending trial, and he also emphasizes that he was ultimately awarded the home and thus will be responsible for the deferred payments when they come due. Jay argues that ordering him to pay Breanna the full amount of deferred payments "is punitive and results in a windfall for Breanna." Brief for appellant at 24. We agree.

We acknowledge that Jay was ordered to continue making mortgage payments on the home pending trial. We also acknowledge that Jay failed to do so because he took advantage of a COVID-19 mortgage relief program. However, upon our review of the record, the only identifiable detriment to Breanna as a result of the forbearance was a decrease in marital equity in the home. That is, the equity in the marital

home would have increased by roughly $500 per month, or a total of roughly $6,000, if Jay had not deferred the payments. Because Jay was ultimately awarded the home, that increase in equity would have increased Jay's share of the marital estate by an equivalent amount. Although, even if that additional $6,000 in equity had been realized and awarded to Jay, he would still have received less than one-half of the marital assets divided by the court.

We conclude it was an abuse of discretion to order Jay to pay Breanna any amount of the deferred mortgage payments, and we modify the final decree to eliminate the cash award of $26,868 to be paid from Jay to Breanna. Accordingly, paragraph 18, subparagraph c, of the decree is modified to eliminate the sentences after the following: "The [real] property shall be awarded to the Defendant. Defendant shall take possession of such property on April 5th, 2021."

*Alimony.*

[5-7] Jay's third assignment of error pertains to the court's award of alimony to Breanna. Under § 42-365, in considering alimony, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. See *Wiedel v. Wiedel*, 300 Neb. 13, 911 N.W.2d 582 (2018). In addition, a court should consider the income and earning capacity of each party and the general equities of the situation. *Id.* The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Id.* An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record. *Id.*

Based on our review of the record, we cannot say the court's award of alimony amounted to an abuse of discretion.

Breanna stayed home with the children throughout the roughly 11-year marriage, while Jay worked full time, including periodic deployments. At the time of dissolution, the court found that Jay earned a monthly income of $5,689.80 and set Breanna's monthly earning capacity at $1,800. Breanna testified that she intended to seek further education to increase her earning capacity and that alimony in the amount requested would facilitate that transition. Under these circumstances, the court's award of alimony was not patently unfair. Thus, we affirm the court's award of alimony in the sum of $500 per month for 24 months and $300 per month for 24 months thereafter.

*Reimbursement of Attorney Fees.*

Jay's fourth assignment of error pertains to the court's failure to reimburse him for $3,570 of Breanna's attorney fees which were charged to the parties' joint credit card. Jay argues that "[o]rdering Jay and Breanna to pay their own debts and their own attorney fees, while ignoring the fact that Breanna paid $3,570 in attorney fees using Jay's credit card, is a clear and obvious abuse of discretion." Brief for appellant at 28. We disagree. First of all, it appears that the credit card used to charge $3,570 in attorney fees was actually a joint credit card, as both parties' names are listed on the account. Moreover, the transaction occurred on December 9, 2019, 3 days prior to Breanna's filing the initial complaint in this action. While the court certainly could have ordered Breanna to reimburse Jay for the $3,570 charge, under the circumstances of this case, we cannot say the failure to do so was an abuse of discretion.

## CONCLUSION

We conclude the district court abused its discretion in ordering Jay to pay Breanna $26,868 representing deferred mortgage payments. Accordingly, we modify the decree to eliminate that cash award, and we affirm the court's division

of the marital estate as modified. With respect to Jay's third and fourth assignments of error, we conclude the record fails to demonstrate an abuse of discretion, and thus, we affirm the order of the district court in those respects.

Affirmed as modified.