Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/09/2025 09:09 AM CDT

Sarah A. Backhaus, appellant, v.
David R. Backhaus, appellee.

___ N.W.3d ____

Filed May 9, 2025.    No. S-23-845.

1.  **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.

2.  **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3.  **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

4.  ____: ____. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

5.  **Divorce: Property Division: Equity.** Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances.

6.  **Divorce: Property Division.** In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties.

7.  ____: ____. In a marital dissolution action, the equitable division of property is a three-step process. The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage. The second step is to value the marital

assets and marital liabilities of the parties. And the third step is to calculate and divide the net marital estate equitably between the parties.

8. ____: ____. The extent to which the property is marital versus nonmarital presents a mixed issue of law and fact.

9. ____: ____. All property accumulated and acquired by either spouse during the marriage is, as a general rule, part of the marital estate.

10. **Divorce: Property Division: Presumptions: Gifts.** Gifts and inheritances, even when received during the marriage, are presumed to be nonmarital.

11. **Divorce: Property Division: Proof.** The burden of proof rests with the party claiming that the property is nonmarital.

12. **Evidence: Proof.** Unless an exception applies, the burden of proof in civil cases requires only the greater weight of the evidence.

13. ____: ____. There is no general rule of evidence that a party must produce the best evidence which the nature of the case permits.

14. **Evidence: Witnesses: Testimony.** A witness' testimony, like a document, is a kind of evidence.

15. **Divorce: Property Division: Proof: Testimony.** A nonmarital interest in property may be established by credible testimony.

16. **Circumstantial Evidence: Proof.** Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact.

Petition for further review from the Court of Appeals, Riedmann, Chief Judge, and Moore and Bishop, Judges, on appeal thereto from the District Court for Douglas County, James M. Masteller, Judge. Judgment of Court of Appeals reversed and remanded with directions.

Lindsay Belmont, of Nebraska Legal Group, for appellant.

Liam K. Meehan, of Higgins Law, Sarah M. Hart, Allison Heineman, and Destiney S. Vinzant, of Hightower Reff Law, L.L.C., for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Funke, C.J.

## I. INTRODUCTION

This case comes before the Nebraska Supreme Court on a petition for further review. The facts involve an action for the

dissolution of marriage between Sarah A. Backhaus and David R. Backhaus. The only issue before us is whether the funds located in the jointly held savings account No. x4020 (account x4020) are marital or nonmarital property. The district court determined the funds to be nonmarital, while the Nebraska Court of Appeals determined the funds to be marital. Because we find that David has carried his burden of proving that the funds are nonmarital, and because we cannot say that the district court abused its discretion in setting off property as nonmarital, we reverse, and remand to the Court of Appeals with directions to affirm the order of the district court.

## II. BACKGROUND

Sarah and David were married in 2010. They separated in February 2021. Sarah filed for divorce in April 2022.

### 1. TRIAL

A 2-day trial was held in March 2023. The following is a synopsis of the limited facts that are pertinent to our disposition of the appeal. Additional facts are mentioned in the analysis section below only to the extent they are relevant to the parties' arguments on appeal.

### (a) Parties' Financial Situation

At trial, David testified that he was a teacher and a coach. He also explained that he supplemented his income by working at a local gym and playing bass guitar in various bands. He testified, "[T]he most [he had] ever made" from these combined ventures was just slightly over $50,000 per year.

Sarah worked for a short period of time at an "advertising agency," but she "did not stay there very long." After that, she worked part time at another company before opening her own business. That business has since closed. Sarah is no longer able to work full time due to reasons not relevant here.

The parties had approximately $20,000 in a small business loan, as well as several thousand dollars' worth of credit card debt and lines of credit.

By the time of trial, the parties had sold their marital home and divided the funds between them.

### (b) Account x4020

Account x4020 is a jointly held savings account, which the parties opened in 2015. Exhibit 10, a copy of the monthly statement for account x4020, shows that in February 2021, the month of the parties' separation, the account had a balance of $323,571.70. However, the testimony at trial indicated that the starting balance for this account was significantly higher.

At trial, David testified that he received an inheritance during the marriage. It is his assertion that the money in account x4020 is from this inheritance. As such, once the parties separated, David moved the funds from account x4020 into his own personal account, to which Sarah does not have access. During David's testimony, the following exchange took place:

Q. Did you receive a significant inheritance during the marriage?

A. I did.

Q. And what's that inheritance from?

A. My mom's — When my mom was young in Taiwan, she was in a band with her three other sisters and they performed a lot, all over the world, and when they made money, they sent it back to their parents.

And their parents ended up buying a plot of land in Taiwan, and over the years, that land became worth more as the, you know, the country basically started expanding and I guess getting more cities.

But, yeah, so they ended up selling that land, and all my family got a cut of that. And I didn't get as much as the other aunts because my mom had passed away, but me and my brother split that money that was sent to my mom.

Q. If you could look in that notebook and look at what's been marked as Exhibit 40, it[']s going to be probably the thickest exhibit in there?

A. Yeah, got it.

Q. Can you tell me what that is?

A. Yeah, that's the deposit of the money that we got from the land.

Q. And is this a joint bank account?

A. Yes.

Q. And whose names are on the account?

A. David Backhaus, Sarah Backhaus.

Q. After the initial deposit, it went quite — it went down quite a bit, correct?

A. Yes.

Q. And why did it go down a chunk?

A. Well, this is kind of where the business comes into play . . . this has been a thing, and I'm not saying I didn't spend any money, I went back to college, and took three years and graduated with a degree.

And we bought the cars, we got one car for each of us, and we — other than that, most of it went to the start up of Sarah's business . . . so between — over a couple year span, we had to restart the business three times with the complete build outs every time, so it definitely took a chunk out of the bank account.

It was at this point that David attempted to offer exhibit 40, which contained several years' worth of bank statements for account x4020. Sarah objected, first asserting that exhibit 40 contained facts not in evidence and, later, that it was hearsay. The court sustained Sarah's objections.

Apart from offering exhibit 10, Sarah did not present any evidence regarding account x4020 or David's inheritance. She does not dispute that David received an inheritance during the marriage.

The district court awarded the balance of account x4020 to David, finding that he had met his burden of proving the account was nonmarital. In doing so, the court relied on the well-established presumption that gifts and inheritances received during the marriage are nonmarital property.

## 2. COURT OF APPEALS' OPINION

Sarah appealed, asserting that account x4020 should have been classified as part of the marital estate. The Court of Appeals agreed, concluding that account x4020 was marital property to be divided equitably between the parties.[1]

In doing so, the Court of Appeals recognized that although documentary evidence may be more persuasive, credible testimony is still sufficient to establish a nonmarital interest. The court, however, found that David's testimony was insufficient to establish such a nonmarital interest because his testimony "[did] not indicate when the inheritance was received, how much the inheritance was, how much of the inheritance was spent during the marriage, or in which account the inheritance was deposited."[2] The Court of Appeals noted that some of those questions could have been answered by exhibit 40, but that the exhibit had been excluded and David's testimony did not discuss the same material. As such, it concluded that "[a]lthough David's testimony may have been sufficient to prove that he received an inheritance during the marriage . . . he failed to testify or produce any evidence about the details of the inheritance."[3] Accordingly, the Court of Appeals reversed the district court's order, remanding the cause with directions to include account x4020 in the marital estate.[4]

We granted David's petition for further review.[5]

## III. ASSIGNMENT OF ERROR

David assigns, restated, that the Court of Appeals erred in finding that his testimony was insufficient to meet his burden of proving that the funds in account x4020 were nonmarital funds to be excluded from the marital estate.

---

[1] *Backhaus v. Backhaus*, No. A-23-845, 2024 WL 4601535 (Neb. App. Oct. 29, 2024) (selected for posting to court website).

[2] *Id*. at *5.

[3] *Id*.

[4] *Id*.

[5] See Neb. Rev. Stat. § 24-1107 (Reissue 2016).

## IV. STANDARD OF REVIEW

[1] In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.[6]

[2] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[7]

[3] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[8]

[4] When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[9]

## V. ANALYSIS

This case presents a single, narrow issue for decision. Because Sarah does not dispute the fact that David received an inheritance during the marriage, the only issue before us is whether David presented sufficient evidence to prove that account x4020 contained his inheritance. Most basically, David argues that his testimony alone is sufficient to establish his nonmarital interest in the account. Sarah counters that his testimony was insufficient and required further supporting detail.

---

[6] *Onstot v. Onstot*, 298 Neb. 897, 906 N.W.2d 300 (2018).

[7] *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023).

[8] *Stava v. Stava, ante* p. 32, 13 N.W.3d 184 (2024).

[9] *Id*.

## 1. Foundational Principles

[5,6] Our case law regarding actions for the dissolution of marriage is well established. Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances.[10] In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties.[11]

[7] In a marital dissolution action, the equitable division of property is a three-step process. The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage.[12] The second step is to value the marital assets and marital liabilities of the parties.[13] And the third step is to calculate and divide the net marital estate equitably between the parties.[14] This case deals exclusively with the first step in the analysis.

[8-10] The extent to which the property is marital versus nonmarital presents a mixed issue of law and fact.[15] We have recently explained that the manner and method of acquisition involve questions of fact, but the classification of the property under those facts is generally a legal question.[16] We have, more specifically, explained that all property accumulated and acquired by either spouse during the marriage is, as a general rule, part of the marital estate.[17] However, gifts and inheritances, even when received during the marriage, are presumed

---

[10] *Parde*, *supra* note 7.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Stava*, *supra* note 8.

[16] See *id.*

[17] *Id.*

to be nonmarital.[18] In this matter, the disputed property is not mixed and is either all marital or all nonmarital.

[11,12] We have also explained that the burden of proof rests with the party claiming that the property is nonmarital.[19] To that end, unless an exception applies, the burden of proof in civil cases requires only the greater weight of the evidence.[20] The greater weight of the evidence means evidence sufficient to make a claim more likely true than not true.[21] That burden of proof applies here, and as the party asserting the nonmarital interest in the property, the burden lies with David.

## 2. DISTRICT COURT PROPERLY CONCLUDED ACCOUNT X4020 IS NONMARITAL

The issue of whether testimony alone is sufficient to establish a nonmarital interest in property is not entirely new. We have addressed this question in *Burgardt v. Burgardt*.[22] In that case, a party who sought to have an inheritance set apart as nonmarital testified that he had received an inheritance but presented no documentary evidence to corroborate his testimony regarding the inheritance itself or the amount thereof. The district court concluded that the party's testimony alone was sufficient to satisfy the burden of proof, and, therefore, it set aside the inheritance as nonmarital. The Court of Appeals, however, reversed the order of the district court and remanded the cause. It found, first, that a nonmarital interest could not be proved by testimony alone, but, rather, that it must be supported by documentary evidence, and second, that the amount of the inheritance must be definitively proved by such combined evidence. We reversed the judgment of the Court of Appeals, finding that neither was necessary; the testimony

---

[18] *Parde*, *supra* note 7.

[19] *Stava*, *supra* note 8.

[20] *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019).

[21] *Id*.

[22] *Id*.

alone carried the party's burden. That conclusion is dispositive in this case.

Here, as in *Burgardt*, the evidence relating to account x4020 consists of David's testimony regarding his receipt of an inheritance, its source, and the various expenses paid from the inheritance. David attempted to offer exhibit 40, but the exhibit was excluded on objection, making his testimony the only evidence he presented on the issue. Exhibit 10, showing the balance of account x4020 at the time of the parties' separation, was offered by Sarah during David's testimony and received by the court.

David contends, and the district court agreed, that his presented evidence was sufficient to carry his burden. To the extent the Court of Appeals found otherwise, David argues that it imposed too high of an evidentiary burden on him, deviating from our holding in *Burgardt*.

On the other hand, Sarah contends, and the Court of Appeals found, that because the evidence in the record did not specifically identify the amount of the inheritance, how much of it had been spent, or whether the inheritance was even deposited into account x4020 to begin with, the district court must have "arbitrarily" selected account x4020 as the account with David's inheritance.[23] Instead, Sarah seeks to have account x4020, as a joint account, divided equitably between the parties.

[13-15] We agree with David and the district court; David's testimony, exhibit 10, and any inferences drawn from the evidence presented at trial are sufficient. Just as we concluded in *Burgardt*, there is no general rule of evidence that a party must produce the best evidence which the nature of the case permits.[24] A witness' testimony, like a document, is a kind of evidence, and a nonmarital interest in property may be established by credible testimony.[25]

---

[23] Supplemental brief for appellant at 9.

[24] *Burgardt, supra* note 20.

[25] *Id*.

Although we agree with Sarah that David's testimony left something to be desired in terms of detail, we have already disavowed the idea of needing to definitively prove the amount of the inheritance, which is, in part, what Sarah takes issue with. Of course, it is axiomatic that an item must be identified to be set off as nonmarital, but its value need not be definitively or conclusively proved; the greater weight of the evidence is sufficient.[26]

[16] Sarah also fails to consider that although the above-mentioned evidence is the only direct evidence relating to the matter, circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact.[27] At trial in this case, there was ample circumstantial evidence, and the logical inferences the circumstantial evidence supports, provide ample foundation for the district court's conclusion.

For example, the quantity of the inheritance, though not specifically known, is still notable. David testified that he received a "significant inheritance" during the marriage. This inheritance was substantial enough that the parties were able to pay for two cars, cover the cost of David finishing school, and "build out[]" Sarah's business three times. David also testified that even after those expenditures, there was money left from the inheritance, which he moved into his own personal account when the parties separated.

Additionally, the parties' financial situation provides insight into the plausibility of account x4020 containing the inheritance. David testified that the inheritance was deposited into a "joint account." The parties only had two joint accounts: a savings account and a checking account with a line of credit attached to it. Exhibit 11 shows that at the time of the separation, the checking account had a balance of $1,142.09 and a loan of $4,290.75.

---

[26] See *id.*

[27] *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023).

The record also indicates that David's annual income, even while he was working three jobs, was barely over $50,000. When asked whether he had put any money into savings, David replied in the negative. During the marriage, Sarah worked briefly at an advertising agency before taking a different job and working part time. In 2017, Sarah opened a business, but that business no longer exists. Sarah's mother testified that at the time of the separation, there was a $20,000 loan and additional credit card debt associated with the business.

To conclude that David's inheritance was in the parties' joint checking account would leave no explanation for the source of the large amount of money in account x4020. Based on the financial condition of the parties, it would not be unreasonable to conclude that David's inheritance was the source of the $323,571.70 in account x4020 in February 2021.

Further, the amount of money in account x4020 could not have come from the sale of the marital home. Prior to trial, but after their separation, the parties sold their marital home for $270,000. The parties split the proceeds, and the money was not placed into the joint accounts.

Any or all of this circumstantial evidence could reasonably point to the conclusion that account x4020 was nonmarital property belonging to David. The district court had this evidence at its disposal when it made its determination, and this court is not inclined to disturb the division of property made by the trial court unless it is patently unfair on the record.[28] We give weight to the circumstances that the district court judge heard and observed the witnesses and accepted one version of facts rather than another.[29]

David's burden was to prove the nonmarital interest by the greater weight of the evidence. When the above material is weighed against the fact that no evidence was introduced to contradict David's narrative, it is particularly clear that David

[28] *Burgardt, supra* note 20.

[29] See *Garrison v. Otto*, 311 Neb. 94, 970 N.W.2d 495 (2022).

has proved, by the greater weight of the evidence, that account x4020 contained the remainder of his inheritance.

## VI. CONCLUSION

For the foregoing reasons, we conclude that the Court of Appeals erred in determining that account x4020 was marital property. Accordingly, we reverse the judgment of the Court of Appeals and remand the cause to that court with directions to affirm the order of the district court.

Reversed and remanded with directions.