IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

COVINGTON V. COVINGTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JEFFREY COVINGTON, APPELLEE AND CROSS-APPELLANT,

V.

SHERRY COVINGTON, APPELLANT AND CROSS-APPELLEE.

Filed June 24, 2025.    No. A-24-496.

Appeal from the District Court for Douglas County: KATIE L. BENSON, Judge. Affirmed.

Sherry Covington, pro se.

Andrew T. Braun and Bradley E. Marsicek, of Goosmann Law Firm, P.L.C., for appellee.

RIEDMANN, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## I. INTRODUCTION

Sherry Covington appeals from the decree of dissolution entered by the Douglas County District Court. Sherry failed to file an appellant's brief. Jeffrey Covington timely filed a cross-appeal challenging various issues in connection with the classification of property and debts. Finding no abuse of discretion, we affirm.

## II. STATEMENT OF FACTS

The parties were married on December 8, 2021. Jeffrey filed a complaint for dissolution on February 17, 2023, roughly 14 months after the marriage. A temporary order was entered on March 31. By agreement of the parties, Sherry was awarded exclusive possession of her premarital residence subject to her payment of the mortgage, utilities, insurance, taxes, and routine maintenance.

- 1 -

Trial was held over 2 days in February 2024. Both parties testified, along with Dan Wilder, a real estate appraiser. Over 100 exhibits were received in evidence.

Sherry owned the home in Omaha where the parties resided during the marriage. She purchased the home in 1999, and the mortgage was paid off prior to the marriage. Wilder, a certified residential real property appraiser, testified that he performed two appraisals on the home. The first appraisal, performed retroactively, valued the property as of December 8, 2021, at $181,000. Wilder was given a list of improvements made to the property since that time, which was provided to him by Jeffrey's attorney. He also inspected the property on January 11, 2024. Wilder then valued the property as of February 17, 2023, at $211,000.

Wilder was asked about the list of improvements made to the property since December 2021, which included replacement of a kitchen window, repair of soffit sections on the front of the house, repair of the vent pipe to the wood-burning stove, replacement of a bathroom fan and light, replacement of a dishwasher, painting of office and baseboard trim, addition of kitchen backsplash, painting of exterior window shutters and entry poles, pressure washing of the front exterior of the house, addition of building shelves in the garage, repair of the back porch steps, and remodel of art room into master bedroom. Wilder was unable to say how much each of these items increased the value of the house. He admitted that in the comparable sales he used for each appraisal the market trend was an increase in value of the homes between 2021 and 2023. Wilder testified that the increase in value of the residence between the two dates was due to both improvements to the home and the increase in the market.

Jeffrey testified more extensively about the repairs and improvements listed above that he personally made to the residence after the parties' marriage. No evidence was adduced about the cost of any of these repairs or improvements or how any of the specific improvements increased the value of the home. Jeffrey asked that the $30,000 increase in value to the house (as determined by the appraiser) be treated as marital.

Sherry testified that the improvements to the home claimed by Jeffrey did not increase the value of her home. Rather, she indicated that the work done to the home constituted repairs. She also disputed much of Jeffrey's testimony. She explained that the art room had mold, that Jeffrey removed part of the drywall, that she removed the mold, and then drywall was put back up. Thereafter, the room was partially painted, and flooring was replaced. According to Sherry, the room was not "remodeled." Sherry also testified that she paid the construction company that did part of the work in this room with her premarital money. Regarding the kitchen window that Jeffrey replaced, Sherry noted that Wilder's appraisal indicated that the window was poorly installed. Sherry testified that the exterior soffit repair claimed by Jeffrey only involved his removal of bird and wasp nests without any repair to the soffit. Regarding the claimed repair to the vent pipe of the wood-burning stove, Sherry maintained that Jeffrey only put duct tape on the pipe. Sherry disputed that any kitchen backsplash was installed during the marriage. According to Sherry, the fan in the bathroom that Jeffrey installed has to be repaired, and the fan in the kitchen was not replaced and is still inoperable. Sherry testified that the bulk of the shelving in the garage was there before the marriage, and what Jeffrey added is removable. Jeffrey did not repair the back steps; he only replaced the post on the top. The upstairs office was painted by Sherry's son, who also assisted Jeffrey with replacing the baseboard trim. Jeffrey removed the exterior window shutters, and

Sherry painted them. Jeffrey put them back up and pressure washed the front of the house. Sherry opined that the appreciation in the value of the home was due to market forces only.

Regarding the Charles Schwab account x7376, Jeffrey testified that it was an account jointly titled by the parties. He indicated that the account was opened in February 2022, at which time he deposited the proceeds from the sale of his home in the sum of $118,723.10. On February 28, he transferred $7,000 into each of the parties' IRA accounts. Jeffrey first asked that the court "carve out" the remaining $104,723 as his premarital money. Jeffrey testified further that the balance of this account was $142,669.23 on December 31, 2022. He thereafter withdrew $82,321.30 in January 2023 and transferred that money to a separate account. He left the remainder of the proceeds in the account for Sherry. Jeffrey maintains that the account thereafter increased in value to $150,872.59. He asked that the remainder of $68,551.29 be "assessed" to Sherry. The proposed property division exhibit offered by Jeffrey listed account x7376 as marital property valued at $142,669.29, with Jeffrey to be awarded the $82,321.30 that he withdrew, and the remaining $60,347.99 awarded to Sherry. He testified that the additional increase in value of the account of roughly $8,000 should be assessed to Sherry.

Jeffrey admitted that both parties used this account from February 2022 up until January 2023; that there were "outgoing wires" and transfers to other Schwab accounts, there were investments in this account that changed in value, and the account was used for marital expenses and spending. Sherry testified that she contributed approximately $50,000 in shares from a premarital account into what became Schwab x7376. The exhibit containing this account showed a "transfer of securities" valued at $50,937 in April 2022. When asked about this transfer, Jeffrey was unable to say where it came from.

Sherry testified that she had a Schwab Roth IRA, x0391, prior to the marriage. She asked that this be awarded to her as her premarital property and not subject to the distribution of the marital estate. During cross-examination, Jeffrey's attorney showed her an exhibit, which Sherry identified as a statement for this account, the first page of which Sherry confirmed was dated December 31, 2021. However, this exhibit was not offered in evidence, and no further questions were asked of Sherry regarding this account. Thus, we don't know the value of this account at the time of the parties' marriage. Regarding Sherry's Roth IRA x0391, Jeffrey testified that he transferred $7,000 into this account from the proceeds of his house sale. Jeffrey offered a statement from this account which showed a $7,000 contribution in 2022. This statement was for the period of January 1-31, 2023, and it showed an increase in value of the investments of $8,899.04 for that month, and an ending value on January 31 of $71,746.54. Jeffrey listed this account on his proposed property division exhibit as marital property, assessed to Sherry, at $71,746.14.

Jeffrey testified that Sherry had a Priceline credit card in her name that at the time of the marriage had a balance of $3,542.44. The December 2022 credit card statement showed a zero balance. Jeffrey asked that the court treat the reduction in Sherry's premarital debt as an asset to her in the division of the estate. According to Sherry, the debt on the card was incurred for friends, who then repaid the debt, and those funds were put back in the parties' joint account.

On May 31, 2024, the district court entered a decree of dissolution. The court made findings regarding the premarital property and debts and divided the marital property and debts of the parties. The court valued the parties' assets and debts as of January 31, when Jeffrey notified

Sherry of the impending divorce. We discuss only the assets and debts relevant to this appeal below.

Relative to this appeal, the district court awarded Sherry the Nebraska property as her premarital asset. The court noted that Sherry purchased the property prior to the marriage, and there was no mortgage against the property at the time of the marriage. The court found that the testimony of Jeffrey and Wilder was unpersuasive as to proving that appreciation during the 14-month marriage was due to alleged improvements made by Jeffrey. Thus, the court offset the Nebraska property to Sherry with no appreciation included in the marital estate.

The district court noted that there was significant evidence adduced as to the Charles Schwab account x7376. The court found that the evidence showed both parties put premarital money into the account and that those monies were commingled during the marriage with both parties frequently accessing and using the account. The court therefore found the account to be marital and for purposes of equalization, the court assessed $82,321.30 to Jeffrey, as he already liquidated that from the account. The remaining portion of $68,000 was assessed to Sherry.

The district court awarded Sherry two Charles Schwab Roth IRAs; x5821 with no marital value, and x0391 with only premarital value. Each party was assigned their own separate debts. The court found that Sherry's paydown of her Priceline premarital debt was paid by her friends back into account x7376, so the court did not include the paydown as requested by Jeffrey.

The district court attached a property equalization spreadsheet to the decree and ordered Jeffrey to pay Sherry the sum of $32,232.58 to equalize the marital estate.

Sherry, self-represented, filed a motion for reconsideration, however, the district court overruled the motion as having been filed out of time. Sherry appealed but she failed to file an appellant's brief, therefore, we do not consider her appeal. See Neb. Ct. R. App. P. § 2-110(A). Jeffrey timely filed a cross-appeal.

## III. ASSIGNMENTS OF ERROR

In his cross-appeal, Jeffrey assigns that the district court abused its discretion when it (1) determined that the marital home's increased equity during the marriage was entirely passive and thus nonmarital, (2) determined that a Schwab brokerage account was entirely marital, (3) awarded Sherry a Roth IRA as her nonmarital property, and (4) failed to account for the paydown of Sherry's premarital credit card debt.

## IV. STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Backhaus v. Backhaus*, 318 Neb. 891, 20 N.W.3d 81 (2025). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## V. ANALYSIS

### 1. FOUNDATIONAL PRINCIPLES

In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties. *Id.* In a marital dissolution action, the equitable division of property is a three-step process. *Id.* The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* And the third step is to calculate and divide the net marital estate equitably between the parties. *Id.* This case deals primarily with the first step in the analysis.

The extent to which the property is marital versus nonmarital presents a mixed issue of law and fact. *Id.* The manner and method of acquisition involve questions of fact, but the classification of the property under those facts is generally a legal question. *Id.* All property accumulated and acquired by either spouse during the marriage is, as a general rule, part of the marital estate. *Id.*

Accrued investment earnings or appreciation of nonmarital assets during the marriage are presumed marital unless the party seeking the classification of the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account or asset and (2) the growth is not due to the active efforts of either spouse. See *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023) (agreeing that active appreciation rule applies equally to appreciation or income during marriage of any nonmarital asset). Appreciation caused by marital contributions is known as active appreciation, and it constitutes marital property. *Id.*

Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024). Separate property can become marital property under either "transmutation" or "active appreciation." *Id.* These two categories are mutually exclusive. *Id.* Transmutation converts an asset entirely from separate to marital and can occur through commingling if the separate property is inextricably mixed with marital property or with the separate property of the other spouse. *Id.* Active appreciation converts to marital property only the increase in a nonmarital asset's value due to a contribution of marital funds or efforts. *Id.* This is opposed to passive appreciation, which is appreciation caused by separate contributions and nonmarital forces. *Id.* If the separate property remains segregated or is traceable into its product, commingling does not occur. *Seemann v. Seemann*, 316 Neb. 671, 6 N.W.3d 502 (2024).

The burden of proof rests with the party claiming that the property is nonmarital. *Backhaus v. Backhaus*, 318 Neb. 891, 20 N.W.3d 81 (2025). Unless an exception applies, the burden of proof in civil cases requires only the greater weight of the evidence. *Id.* The greater weight of the evidence means evidence sufficient to make a claim more likely true than not true. *Id.* In connection with the appreciation of nonmarital assets during the marriage, the burden is on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income. *Parde v. Parde, supra.*

## 2. DISTRICT COURT CLASSIFICATION OF PROPERTY AND DEBT

### (a) Equity in Residence

Jeffrey assigns as error the district court's determination that the increased equity in Sherry's premarital residence was not the result of active efforts during the marriage. Jeffrey claims that the improvements made to the residence were marital contributions that caused the appreciation in value during the marriage, and as such, the appreciation should be considered active appreciation. Jeffrey testified to the various improvements he claimed were made; however, Sherry disputed Jeffrey's claims, testifying that the items were either not completed to the extent claimed by Jeffrey, were done before the marriage, or were simply in the nature of repairs or maintenance. Wilder testified that the increase in value of the residence from the time of the marriage to separation was due to both the improvements and market forces, however, he did not separate out the portion of the increase attributable to each factor. Sherry testified to her opinion that all of the increase in value was due to market forces and not the repairs done to the home.

Although the district court found that Jeffrey failed to prove that the appreciation in value during the 14-month marriage was due to alleged improvements made by him, we note that it was Sherry's burden, as the owning spouse, to prove that any marital contributions did not cause the appreciation. *Parde v. Parde, supra*. As noted above, Sherry rebutted Jeffrey's evidence about the alleged improvements and elicited testimony from Wilder that he could not identify how any of the alleged improvements specifically increased the value of the home and he admitted that the increase in value was also due to market forces. The district court apparently found Sherry's evidence to be more credible, and we give deference to the trial court in that regard. In our review of the record, we conclude that Sherry met her burden of proving that any alleged marital contributions to the residence did not cause the appreciation in value.

### (b) Schwab Account x7376

Jeffrey argues that the district court abused its discretion when it determined that both parties put premarital money into this account and that the account was entirely marital, despite the evidence and testimony showing that Jeffrey's nonmarital funds used to open the account were readily traced through the marriage to their source. We disagree.

Jeffrey admitted at trial that this account was used by the parties during the marriage for marital purposes. Jeffrey offered evidence to show that the account was opened in February 2022, that $118,723 was deposited from his premarital account into which he had deposited the proceeds from the sale of his premarital home, and that $22,199 in "transfer of securities" was also from his premarital account. The record shows that $14,000 was withdrawn at the same time, with $7,000 transferred to each party's separate IRA. The exhibits further show that a $50,936.61 "transfer of securities" occurred on April 30, 2022. Sherry testified that this was a transfer of securities from her premarital account; Jeffrey did not dispute this. However, he now argues that because Sherry did not have any documentary evidence to support her claim, that the transfer should be considered a marital contribution. The Nebraska Supreme Court has recognized that testimony alone regarding the existence of nonmarital contributions can be considered sufficient evidence. See *Backhaus v. Backhaus*, 318 Neb. 891, 20 N.W.3d 81 (2025) (witness' testimony, like document, is kind of evidence; and nonmarital interest in property may be established by credible evidence).

Further, although Jeffrey now asserts in his brief on appeal that the entire balance of x7376 should have been considered his nonmarital property, his proposed property division exhibit offered at trial listed the account as marital property valued at $142,669.29, and requested that the court divide it by awarding Jeffrey the $82,321.30 that he withdrew in January 2023, and awarding Sherry the remainder of $60,347.99. Because the account had increased in value during the pendency of the action, Jeffrey asked that the additional approximately $8,000 be assessed to Sherry. The district court divided this account in the manner suggested by Jeffrey. In the decree, the court listed the value of the account at $150,321, assigned $82,321 to Jeffrey and $68,000 to Sherry.

Finally, we agree with the district court's conclusion that since both parties put premarital money into the account and the account was accessed and used by both parties during the marriage, the monies in the account were commingled during the marriage to the extent that the account was marital property. See *Stava v. Stava, supra*. We can find no abuse of discretion in this regard.

### (c) Schwab Roth IRA x0391

Jeffrey argues that the district court abused its discretion when it awarded Sherry this account as her premarital property, as she failed to prove her premarital portion of the account, and Jeffrey made contributions of premarital funds into the account during the marriage. Sherry's testimony, which was not rebutted, is sufficient to meet her burden of proving that she owned this account before the marriage, particularly given her confirmation that the exhibit shown to her by Jeffrey's counsel was the account statement for x0391, the first page of which was dated the same month as the parties' marriage in December 2021. The only contribution that Jeffrey asserted that he made to this account was $7,000 in 2022. However, it also appears that this account fluctuated in value during the marriage, and increased in value over $8,000 in the month before Jeffrey filed for dissolution. We find no abuse of discretion by the district in assigning this asset to Sherry as nonmarital.

### (d) Priceline Debt

Jeffrey argues that the district court abused its discretion when it failed to account for the paydown of Sherry's premarital Priceline credit card debt using marital funds from a marital checking account. Account statements showed that there was a balance on this credit card of $3,842.04 at the time of the parties' marriage and that the debt was paid during the marriage. Sherry testified that this debt was incurred prior to the marriage to assist friends who then reimbursed her and that the funds were paid back into the parties' joint account. Again, Jeffrey asserts that without documentary evidence, Sherry failed to prove this reimbursement. The district court implicitly found that Sherry's testimony was credible, and we cannot say that the court abused its discretion in doing so.

### VI. CONCLUSION

Finding no abuse of discretion by the district court in its determinations regarding the parties' assets and debts, both nonmarital and marital, as asserted by Jeffrey, we affirm the decree in its entirety.

AFFIRMED.