IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KETCHAM V. KETCHAM

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DAN H. KETCHAM, APPELLEE,

V.

KARI H. KETCHAM, APPELLANT.

Filed November 18, 2025.    No. A-24-802.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed as modified.

Angela Dunne and Kelsey Deabler, of Koenig | Dunne, P.C., L.L.O., for appellant.

Christopher A. Vacanti and William L. Finocchiaro, of Vacanti, Shattuck, Finocchiaro, for appellee.

PIRTLE, BISHOP, and FREEMAN, Judges.

FREEMAN, Judge.

## INTRODUCTION

Kari H. Ketcham appeals the decree of dissolution of marriage entered by the district court for Douglas County. She argues that the district court erred in its nonmarital classification of a downpayment on a house, a retirement account, and an investment account. For the reasons explained below, we affirm the district court's order as modified.

## BACKGROUND

On May 11, 2018, Dan H. Ketcham and Kari were married. On June 1, 2023, the parties separated, and Dan filed his complaint for dissolution of marriage on August 11. On May 28, 2024, trial was held. At trial, the parties provided evidence and testimony on Dan's inherited and premarital property with the valuation date agreed upon as the separation date.

- 1 -

Shortly after the marriage in July 2018, Dan's mother passed away and left him an inheritance. The inheritance included $206,966.61 in cash, retirement accounts, and farmland. Dan deposited the inherited cash into his checking account on September 23, 2019. That same day, he transferred $155,000 from his checking account into his savings account. From 2018 through 2019, the inherited retirement accounts produced $30,846 from either minimum distributions or liquidation, and the inherited farmland produced $52,544 in rent. Dan testified that the money he received from the inherited retirement accounts and farmland was deposited in either his checking or savings accounts. Dan also deposited his income into his bank accounts and used the bank accounts for marital expenses.

On August 14, 2020, after receiving his inheritance, Dan purchased a house in Omaha, Nebraska. The day prior, on August 13, Dan transferred $200,000 from his savings account into his checking account. On the purchase date, Dan withdrew $201,047.36 from his checking account to pay for the downpayment on the Omaha house. The sale from Dan's previous premarital house occurred after the purchase of the Omaha house.

Dan's premarital property included a retirement account and an investment account. Dan owned a retirement account consisting of two 401(k)s through his law firm. He became a partner at the law firm prior to his marriage to Kari. At the time of trial, Dan did not provide a statement indicating the value of his retirement account from the date of his marriage to Kari. However, Dan provided a statement indicating the value was $898,926.96 on January 31, 2017. He testified that this was the amount he equally split with his former spouse from a previous marriage, leaving him with $449,463 in his retirement account prior to his marriage to Kari.

Dan contributed to his retirement account through payroll deductions, safe harbor contributions, and profit-sharing contributions. Dan testified that the safe harbor contributions were based on Dan's compensation, and the profit-sharing contributions were based on the dividends Dan received from being a shareholder at the law firm. Dan only receives safe harbor and profit-sharing contributions while he is employed at the law firm. Dan did not provide any other evidence or testimony regarding the terms and conditions of the safe harbor and profit-sharing contributions. At trial, Dan himself was unsure as to how the safe harbor contributions worked. Dan provided evidence regarding the growth in the retirement account through an aid to the court. The aid listed contributions during the marriage and the contributions' proportional share in the growth of the retirement account. The aid classified each contribution, and its proportional share in the growth, as either marital or nonmarital. The district court found that the aid accurately reflected the valuation of growth during the marriage. Dan did not provide any other evidence indicating how the growth occurred.

At the time of marriage, Dan's investment account consisted of 100 shares of Berkshire B stock. As previously mentioned, on September 23, 2019, Dan deposited his inherited cash into his checking account. The next day, on September 24, Dan transferred $35,000 from his checking account into his investment account. Throughout the marriage, Dan made stock purchases within the investment account resulting in up to a 140 percent return. He indicated he was a "genius investor." Kari testified, and Dan did not refute, that she also conducted her own research and contributed to the decisions regarding certain stock purchases. Both parties had a financial advisor, but the financial advisor's contributions to the decisions regarding the investment account were not discussed at trial. On May 31, 2023, the investment account was valued at $147,528.75 and

contained Amazon, Apple, Bloom Energy, and Tesla stock in addition to the original Berkshire B stock; the 100 Berkshire B shares were worth $32,108. Dan has kept the original 100 Berkshire B shares from the time of marriage until the separation date.

At trial, Dan did not have all of his investment account statements. After trial on June 7, 2024, Dan moved to reopen the record to introduce exhibit 47, which consisted of additional statements from his investment account. On June 14, the district court received exhibit 47. Exhibit 47 indicated that Dan deposited an additional $20,000 into his investment account in April 2020. The $20,000 deposit was not discussed at trial.

The decree of dissolution of marriage was entered on October 4, 2024. First, the district court found that Dan's $200,000 down payment on the Omaha house was made with nonmarital property. The district court found that Dan proved he received at least $650,212.61 from his inheritance and premarital funds and that the $200,000 downpayment could be traced to those funds. From the $650,212.61, the district court only gave Dan nonmarital credits for the $200,000 down payment, $35,000 to the investment account, and an additional $117,538.44. The court reasoned that "to not give credit for any of these monies would be inequitable and unfairly enrich" Kari. Second, the district court classified Dan's premarital retirement account as nonmarital. Third, the district court found that Dan's safe harbor and profit-sharing contributions to his retirement account were nonmarital as they derived from his premarital interest in his law firm. Even if the safe harbor and profit-sharing contributions were marital, the district court ruled that it would still divide the retirement account the same, as Kari would receive one-third of the marital estate and Dan would receive two-thirds of the marital estate pursuant to *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). Lastly, the district court found that Dan's investment account was nonmarital, as no marital funds contributed to the investment account. Kari appeals.

ASSIGNMENTS OF ERROR

Kari assigns that the district court erred in determining Dan met his burden in proving (1) his nonmarital property could be traced to a $200,000 downpayment on the Omaha house, (2) his premarital retirement account was nonmarital, (3) the safe harbor and profit-sharing contributions were nonmarital, and (4) his investment account was nonmarital.

STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of property division. See *Backhaus v. Backhaus*, 318 Neb. 891, 20 N.W.3d 81 (2025). These determinations are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. See *id.* A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.* When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

ANALYSIS

Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. *Backhaus v. Backhaus, supra.* In a marital dissolution action, the equitable division of property is a three-step process. *Id.* The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage. *Id.* The extent to which the property is marital versus nonmarital presents a mixed issue of law and fact. *Id.* The manner and method of acquisition involve questions of fact, but the classification of the property under those facts is generally a legal question. See *id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* The third step is to calculate and divide the net marital estate equitably between the parties. See *id.*

The burden of proof rests with the party claiming that the property is nonmarital. See *id.* The burden of proof in civil cases requires only the greater weight of the evidence. See *id.* The greater weight of the evidence means evidence sufficient to make a claim more likely true than not true. *Id.*

The "Asset/Debt Table" attached to the decree reflects the district court's award of $300,999 in assets awarded to Dan and $56,665 awarded to Kari, excluding their retirement accounts. This resulted in an equalization payment of $122,167 owed by Dan to Kari ($300,999 - $56,665 = $244,334/2). Kari takes issue with two values used to reach that equalization amount. She argues that Dan failed to prove he was entitled to a premarital credit of $200,000 toward the value of the marital home. She also argues that Dan failed to prove that the entire balance of his Schwab investment account #0119 ($147,528.75) was nonmarital. As discussed below, we cannot say that the court abused its discretion regarding the premarital credit given for the house. However, we agree with Kari that the evidence supported only a portion of the Schwab investment account being nonmarital, and therefore the court's equalization award requires modification, as we will further explain.

As previously mentioned, the court's equalization judgment did not include Dan's and Kari's retirement accounts, as the district court considered those values separately. As we will discuss, we conclude the court abused its discretion by finding certain retirement contributions and their increased values was nonmarital.

As we address Kari's arguments related to the district court's characterization of certain property as nonmarital, we reiterate that Dan has the burden of proof by the greater weight of the evidence to prove that the property is more likely nonmarital property than not.

*Downpayment on Omaha House.*

Kari argues that the district court abused its discretion in determining Dan met his burden of tracing a $200,000 downpayment on the Omaha house to nonmarital funds because any nonmarital property was comingled with marital property. Kari argues in her brief that funds from the sale of Dan's premarital house could not be traced to the $200,000 downpayment. Dan concedes this point; however, he contends that the downpayment is traceable to his inheritance. Kari did not specifically deny that Dan received an inheritance. Therefore, only Dan's inheritance will be discussed.

- 4 -

Property that a spouse acquired by inheritance is nonmarital. See *Radmanesh v. Radmanesh*, 315 Neb. 393, 996 N.W.2d 592 (2023). Nonmarital property becomes marital when nonmarital property is inextricably mixed, or comingled, with marital property. See *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024). Nonmarital property remains nonmarital when it is "segregated or is traceable into its product." *Seemann v. Seemann*, 316 Neb. 671, 683, 6 N.W.3d 502, 516 (2024).

The district court was able to trace the inheritance to the $200,000 downpayment. Before the Omaha house was purchased in August 2020, Dan received a nonmarital inheritance from cash, retirement accounts, and rent. On September 23, 2019, Dan deposited the inherited cash of $206,966.61 into his checking account and immediately transferred $155,000 into savings. The next day, Dan withdrew $35,000 from his checking account and deposited the amount into his investment account, leaving $155,000 in savings and $16,966.61 in checking attributed to inherited cash. From 2018 through 2019 Dan received $30,846 from inherited retirement accounts and $52,644 from rent on the inherited farmland that he deposited into his bank accounts. In total, the $171,966.61 in cash, $30,846 from retirement accounts, and $52,644 from rent Dan received between 2018 and 2019 totaled $255,456.61 of inherited funds. Though transfers occurred between Dan's checking and savings accounts through 2018 and the purchase of the house, the downpayment can also be traced to either Dan's checking or savings account by the $200,000 transfer from savings to checking and the August 14, 2020, checking withdrawal.

We note that significant deposits and withdrawals were made in Dan's accounts throughout the 2 years between Dan receiving the inheritance and the down payment on the house. However, based upon our review of the evidence, the tracing of $255,456.61 of Dan's inherited funds to a $200,000 down payment is not clearly untenable. While the district court found that Dan proved $650,212.61 from inheritance and premarital sources, they only credited the $200,000 down payment, $35,000 to the investment account, and an additional $117,538.44 to Dan as nonmarital from the $650,212.61. Though the Nebraska Supreme Court recognizes tracing, "the overarching principle in the division of marital property is equity, ultimately guided by fairness and reasonableness." *Osantowski v. Osantowski*, 298 Neb. 339, 357, 904 N.W.2d 251, 266 (2017). It is reasonable for the district court to allow Dan to receive a nonmarital credit for a portion of his inheritance.

In conclusion, the district court did not abuse its discretion in determining Dan met his burden in tracing nonmarital property to the $200,000 downpayment on the Omaha house.

*Premarital Retirement Account.*

Kari initially argues that the district court abused its discretion in determining that Dan was able to prove his premarital retirement account was nonmarital because he was unable to establish the value of the retirement account at the time of marriage. She alternatively argues that if we conclude there was sufficient evidence to establish the premarital interest, then the court abused its discretion by not dividing the remaining balance equally between the parties. We find no abuse of discretion by the court in determining that Dan proved a portion of his retirement accounts was premarital. However, we disagree with the court that the only marital portion was what Dan contributed to his retirement during the marriage.

Property that a spouse acquired before marriage is nonmarital. See *Radmanesh v. Radmanesh*, 315 Neb. 393, 996 N.W.2d 592 (2023). An item must be identified to be set off as nonmarital; but its value need not be definitively or conclusively proved. See *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). Stated another way, a proponent must prove value by the greater weight of the evidence. See *id.* Testimony is sufficient to satisfy the burden of proof. See *Backhaus v. Backhaus*, 318 Neb. 891, 20 N.W.3d 81 (2025). "There is no general rule of evidence that a party must produce the best evidence which the nature of the case permits." *Id.* at 900, 20 N.W.3d at 88 (referencing *Burgardt v. Burgardt, supra*).

Dan met his burden of proving his premarital retirement account was nonmarital as it was acquired before marriage. Dan identified the retirement account by providing a statement from January 31, 2017, and testifying that he received half of this amount from a previous marriage. Though the statement was from about 15 months prior to his marriage to Kari, his statement and testimony indicated he had $449,463 before the marriage. Kari also concedes that this amount existed in his retirement account before the marriage. Although Dan did not offer direct evidence of the valuation of the retirement account at the time of the marriage, he proved by the greater weight of the evidence he had $449,463 in his premarital retirement account. Therefore, the district court did not abuse its discretion in determining that Dan met his burden to prove that $449,463 of his retirement account was nonmarital. We next address where we find an abuse of discretion regarding the characterization of other portions of Dan's retirement funds.

*Safe Harbor and Profit-Sharing Contributions.*

The district court determined that Dan's contributions to his retirement accounts during the marriage were marital. To equalize the parties' retirement accounts, it attributed a value of $136,722 to Dan and $39,697 to Kari and required Dan to transfer $48,513 from his retirement funds to Kari. Neither party complains about this equalization determination.

However, Kari argues that the district court abused its discretion in determining Dan's safe harbor and profit-sharing contributions to his retirement account were nonmarital. We agree.

Generally, marital property is "all property accumulated and acquired by either spouse during the marriage." *Backhaus v. Backhaus*, 318 Neb. at 898, 20 N.W.3d at 87. When contributions are added to a retirement account during marriage, the contributions are marital. See *Schwensow v. Bartnicki*, 32 Neb. App. 798, 6 N.W.3d 549 (2024). An increase in a nonmarital asset's value is marital when it is due to efforts made during the marriage. See *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024).

First, the safe harbor contributions were marital because they were earned by Dan's efforts during the marriage. The safe harbor contributions were based on Dan's income and were dependent on his employment at the law firm. As they were earned during the marriage, the safe harbor contributions are assumed marital, unless Dan proved otherwise. However, Dan did not provide any other evidence or testimony for the court to find the safe harbor contributions nonmarital, and Dan was unsure on how the safe harbor contributions worked. Dan failed to meet his burden to prove that the safe harbor contributions were nonmarital.

Second, Dan's profit-sharing contributions were marital because they were derived from the dividends of his law firm. Dan received dividends because he is a partner at the law firm. Dan only receives dividends while he is employed at the law firm. Even though he was a partner at his

law firm prior to the marriage, Dan received the profit-sharing contributions as a result of his efforts during the marriage contributing to the profits at the law firm. Dan failed to meet his burden to prove that the profit-sharing contributions were nonmarital.

Therefore, the district court abused its discretion in determining that Dan met his burden to prove that the safe harbor and profit-sharing contributions were nonmarital. However, regardless of the classification of the contributions, the district court did not err in its equitable distribution of the retirement account which we will discuss further below.

*Investment Account.*

Kari argues that the district court erred in classifying Dan's Schwab investment account #0119 as nonmarital because Dan's marital efforts and funds contributed to the growth of the account. Kari does not challenge the court's handling of Dan's other Schwab account (#9271).

As stated above, property that a spouse acquired before the marriage, or by gift or inheritance, is nonmarital. See *Radmanesh v. Radmanesh*, 315 Neb. 393, 996 N.W.2d 592 (2023). Nonmarital property remains nonmarital when appreciation is caused by nonmarital contributions and nonmarital efforts. See *Stava v. Stava, supra*; see also *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017) (describing growth solely due to inflation, market forces, or guaranteed rate as passive appreciation). Active appreciation can convert nonmarital property to marital property when a nonmarital asset's value is due to a contribution of marital funds or efforts. *Stava v. Stava, supra*; see also *Stephens v. Stephens, supra* (describing growth due to direct or indirect efforts, contribution, or fund management as active appreciation).

The district court concluded that the entirety of Dan's Schwab investment account #0119 was nonmarital and therefore no value for this account was included in the marital estate. We agree with the district court in part. The evidence established that Dan had Berkshire B shares at the time of marriage and was able to trace $35,000 of his inherited cash into his investment account. However, the district court did not address the additional $20,000 that Dan deposited into his investment account in April 2020. The additional $20,000 Dan deposited was listed in the statements that Dan provided after trial. Since the statements were provided after trial, Dan did not testify to the origins of the $20,000 deposit. Dan argues in his brief that this amount can be assumed to have come from his inheritance, but Dan did not testify to this at trial. The $20,000 Dan deposited during the marriage is marital unless he can prove otherwise. Dan failed to provide any proof of the origin of the $20,000 deposit at trial; therefore, the $20,000 deposit is marital.

Also, the district court only discussed the origins of the investment account, and it did not discuss the growth that occurred on the investment account. The growth in the investment account requires an additional analysis.

The Supreme Court adopted several factors to determine whether a party's efforts contributed to the growth on an account. See *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020). The factors to consider are:

> (1) the nature of the investment; (2) the extent to which the investment decisions are made *only* by the party or parties, made by the party or parties in consultation with their investment broker, or solely made by the investment broker; (3) the frequency of contact between the investment broker and the parties; (4) whether the parties routinely made investment decisions in accordance with the recommendation of the investment broker, and

the frequency with which the spouses made investment decisions contrary to the advice of the investment broker; (5) whether the spouses conducted their own research and regularly monitored the investments in their accounts, or whether they primarily relied on information supplied by the investment broker; and (6) whether the decisions or other activities, if any, made solely by the parties directly contributed to the increased value of the investment account.

*Id.* at 959-60; 937 N.W.2d at 850 (emphasis in original).

In *White*, the Supreme Court considered the above factors in determining how the party's efforts contributed to the growth of a stock account. The Supreme Court found that no evidence was provided to establish the growth was due solely to passive efforts such as market forces or a third party's recommendations. See *White v. White, supra.* Instead, the party used his modern portfolio theory to achieve a successful rate of return. See *id.* The Supreme Court distinguished this in finding that the party had 6,500 shares of stock in ConAgra that originated from an inheritance or gift. See *id.* No changes occurred to the ConAgra shares during the marriage and were therefore nonmarital. See *id.*

Likewise, Dan did not provide evidence that the growth in his investment account was solely due to passive forces. He also did not discuss if he followed his financial advisor's recommendations. Instead, Dan described himself as a "genius investor" whose stock purchases resulted in up to a 140 percent return. Kari also contributed to the stock purchase decisions. This is distinguishable from the Berkshire B shares that Dan had at the time of marriage. According to the investment account statements, Dan had 100 Berkshire B shares at the time of the marriage that remained there until the time of separation. As no changes occurred to the Berkshire B shares, except for passive growth due to the change of market forces, the 100 Berkshire B shares are nonmarital.

In conclusion, the district court abused its discretion in determining Dan met his burden to prove the entire investment account was nonmarital. Dan met his burden to prove that the 100 Berkshire B shares, valued at $32,108 as of May 31, 2023, and the $35,000 traced to Dan's inheritance is nonmarital; however, he failed to meet his burden to establish that any additional growth in this account was nonmarital. Therefore, the remaining value of the investment account is marital.

*Equitable Distribution.*

Although not specifically assigned as error, considering our differing conclusions regarding the retirement and investment accounts' classification, we review the district court's equitable division of property. In following the three-step process of dividing property equitably, we first reviewed the district court's classification of property as either marital or nonmarital. We determined that the safe harbor and profit-sharing contributions were marital; however, the district court did not err in finding there was sufficient evidence that $449,463 was nonmarital. This leaves $419,636 of Dan's retirement account, including the growth, as marital.

The parties also did not discuss in their briefs the classification of the growth in Dan's retirement account as marital or nonmarital, nor was it specifically assigned. We address the growth in the retirement account as it relates to our review of the district court's equitable division.

Appreciation of a nonmarital asset during the marriage is marital unless the party seeking to classify the growth as nonmarital proves (1) the growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse. See *Seemann v. Seemann*, 316 Neb. 671, 6 N.W.3d 502 (2024). The district court adopted an aid identifying a value for the growth and tracing the growth to contributions, but the aid did not address what efforts caused the growth. Nor did Dan provide any other evidence regarding what efforts contributed to the growth. Dan did not meet his burden to prove that the growth was nonmarital because he did not provide any proof as to what efforts caused the growth. See, also, *Schwensow v. Bartnicki*, 32 Neb. App. 798, 815, 6 N.W.3d 549, 564 (2024) (finding evidence indicating account "had grown without me doing anything to them" was not sufficient to overcome presumption that growth was marital). Therefore, the growth on the retirement account is presumed marital for our review of the district court's equitable division.

The third step is to calculate and divide the net marital estate equitably between the parties. Pursuant to § 42-365, the court may order a division of property based on the circumstances of the parties and duration of the marriage. There is no mathematical formula by which property awards can be precisely determined, but, generally, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024).

According to the decree, the district court concluded that it would have divided Dan's retirement account the same regardless of the status of the safe harbor and profit-sharing contributions, based on the general rule that a spouse should be awarded one-third to one-half of the marital estate. We are not inclined to disturb the district court's order of division, considering the circumstance of the parties and relative short duration of their marriage. Therefore, the district court's division is still equitable regardless of the classification of Dan's retirement account when considering the division of the total marital estate, explained further in the grid below.

Furthermore, we determined that the $35,000 from Dan's inheritance and 100 Berkshire B shares valued at $32,108 of Dan's investment account is nonmarital. The remaining $80,421 of Dan's investment account is marital. We modify the decree to award Kari one-half, or $40,210, of the marital portion of Dan's Schwab account #0119, as shown below.

CONCLUSION

We conclude that the district court abused its discretion in classifying Dan's safe harbor and profit-sharing contributions and his entire Schwab investment account #0119 as nonmarital, as explained above. For clarity, the division of the marital estate, limited to the modifications, shall be as follows:

| Marital Assets: | Dan | Kari |
|---|---|---|
| Marital Estate Per Decree | $300,999 | $96,362 |
| Dan's Retirement Account | $419,636 | |
| Dan's Investment Account (#0119) | $80,421 | |
| Total | $801,056 | $96,362 |
| Equalization by District Court ($122,167 + $48,513) | (170,680) | $170,680 |
| Net Total | $630,376 | $267,042 |

Modification:

| | | |
|---|---|---|
| Additional Equalization | (40,210) | $40,210 |
| Net Total | $590,166 | $307,252 |

This division conforms to the general rule that a spouse should be awarded one-third to one-half of the marital estate, based on the circumstances of the parties and the relative short duration of their marriage. The decree is therefore modified accordingly. We otherwise affirm.

AFFIRMED AS MODIFIED.